UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SANDRA BASTILLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:16-cv-31-NT |
| | ) |
| MAINE PUBLIC EMPLOYEE | ) |
| RETIREMENT SYSTEM; | ) |
| MAINE TURNPIKE AUTHORITY, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTIONS TO DISMISS**

Before the Court are the Defendants' motions to dismiss the Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF Nos. 5, 7). For the reasons stated below, the motions are **GRANTED**.

**BACKGROUND**

The Plaintiff in this case is Sandra Bastille, a former toll booth collector and customer service representative for the Maine Turnpike Authority (the "**MTA**"). Compl. ¶ 1 (ECF No. 1); Ex. A to Maine Public Employees Retirement System's Mot. to Dismiss 4 ("**Ex. A**") (ECF No. 5). The Defendants are the MTA and the Maine Public Employees Retirement System ("**MainePERS**"), which Bastille describes as "quasi-governmental divisions of the State of Maine." Compl. ¶ 3. The MTA has statutory authority "to operate and maintain the turnpike from a point at or near Kittery in York County to a point at or near Augusta in Kennebec County." 23 M.R.S.A. § 1963. MainePERS is a retirement system established "for the purpose of

providing retirement allowances and other benefits" for state employees. 5 M.R.S.A. § 17101(1).

Bastille started working for the MTA in 2004. Ex. A at 4. In 2011, she began to face challenging medical issues. In order to attend to personal medical care, Bastille requested leave pursuant to the Family and Medical Leave Act ("**FMLA**"). Compl. ¶ 6; Ex. A at 5. The MTA granted her request and Bastille began FMLA leave sometime in March of 2011. Ex. A at 5. On March 11, 2011, Bastille's doctor informed the MTA that she needed surgery and would not be able to return to work for an undetermined amount of time. Ex. A at 5. At this point, according to the MTA, Bastille had exhausted all of her paid leave, and thus March 11, 2011 was the last day she received payment for her work. Ex. A at 7 n.1. Bastille alleges that the MTA was wrong on this point, as she "still had time on the books" as of March 11, 2011. Compl. ¶ 9. After she extended her unpaid leave, the MTA ultimately formally terminated Bastille on December 27, 2011. Ex. B to MainePERS's Mot. to Dismiss 2 ("**Ex. B**") (ECF No. 5). On January 5, 2012, the MTA paid Bastille $2.36 for 0.13 hours of unused vacation time. Ex. B at 3; Ex. 9 to Pl.'s Answer to Def. MTA's Mot. to Dismiss (ECF No. 12-1).

In July of 2011, Bastille applied to MainePERS for disability retirement benefits. Ex. A at 1. Under Maine law, covered employees "qualif[y] for a disability retirement benefit if disabled while in service." 5 M.R.S.A. § 17924(1). A "disabled" employee is one who "is mentally or physically incapacitated" where the incapacity is expected to be permanent, it is impossible for the employee to perform his or her job

2

duties, the incapacity continues for two years and renders the employee "unable to engage in any substantially gainful activity for which the member is qualified by training, education or experience," and the incapacity "may be revealed" by statutorily-permitted medical exams or tests. *Id.* at § 17921(1). "Service" is defined as "service as an employee for which compensation was paid." *Id.* at § 17001(37).

In December of 2011, MainePERS denied Bastille's application for disability retirement benefits. Ex. A at 1. Bastille appealed, and in January of 2014 the MainePERS Board of Trustees (the "**Board**") upheld the denial of benefits in a twelve-page written decision. Ex. A at x, 12. In its decision, the Board acknowledged that Bastille does indeed face challenging medical conditions, but it concluded she was not disabled at the time of her last date in service with the MTA, which was March 11, 2011. Ex. A at 10-11. On March 17, 2014, Bastille filed a petition for reconsideration with the Board, noting that since their decision, she had located her 2012 W-2 tax form, which showed that she was paid for unused vacation time in January of 2012. Ex. 14 to Pl.'s Answer to Def. MTA's Mot. to Dismiss ("**Ex. 14**") (ECF No. 12-1). The wages reflected on that tax form, she posited, meant that she had remained "in service" with the MTA beyond March 11, 2011. Ex. 14.[1]

Two days later, on March 19, 2014, Bastille filed a Rule 80C Petition for Review of Final Agency Action in York County Superior Court, arguing as grounds for relief that MainePERS "defined the term 'in service' under Title 5, MRSA § 17924 in such

---

[1]   It is not clear from the materials provided by the parties how or whether this petition for reconsideration was resolved.

3

a way that the Plaintiff could not qualify for benefits." Ex. B at 1. On June 30, 2015, the Superior Court denied the petition for lack of subject matter jurisdiction. Ex. C to MainePERS's Mot. to Dismiss 2 ("**Ex. C**") (ECF No. 5). MainePERS contends, and Bastille does not challenge, that the Superior Court based its dismissal on Bastille's failure to file her Rule 80C petition within the applicable 30-day statute of limitations. MainePERS Mot. to Dismiss 3 (ECF No. 5); *see also* 5 M.R.S.A. § 11002(3). Bastille appealed the Superior Court's dismissal of her Rule 80C petition to the Law Court. Ex. C at 2. That appeal was recently denied. *Bastille v. MainePERS*, 2016 Me. 124, ---A.3d---.

Six months after filing her notice of appeal with the Law Court, Bastille filed the instant federal action. In her Complaint, she alleges five counts: (1) interference with FMLA leave; (2) retaliation for taking FMLA leave; (3) failure to maintain and supply records as required by the Fair Labor Standards Act ("**FLSA**"); (4) breach of contract; and (5) unjust enrichment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." In order to state a claim, a plaintiff must satisfy Federal Rule of Civil Procedure 8(a)'s limited notice pleading standard, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not set forth "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "it must nonetheless 'contain sufficient factual matter, accepted as true, to state a

4

claim to relief that is plausible on its face.'" *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Applying this standard requires two steps: first, "'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]'" and second, "take the facts in the complaint as true, 'drawing all reasonable inferences in [plaintiff's] favor, and see if they plausibly narrate a claim for relief.'" *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717 (1st Cir. 2014) (alteration in original) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

On a 12(b)(6) motion, a court is normally limited to "'facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment.'" *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008)). However, it is also well-established that a court "'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Here, Bastille's Complaint makes specific references to her administrative proceedings with MainePERS, proceedings that form the basis for her claims in this action. Compl.

¶¶ 5, 7, 8. Moreover, where a motion to dismiss is based on the defense of res judicata, a "court may take into account the record in the original action." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).

## DISCUSSION

In her Complaint, Bastille has made statutory claims under the FMLA and FLSA and common law claims for breach of contract and unjust enrichment. Though she has chosen those labels, at their core, her contentions are as follows: (1) MainePERS should have credited her time on unpaid FMLA leave as "service" time under Maine law; and (2) the $2.36 she received from the MTA in 2012 should have counted as compensation for purposes of determining whether she was in "service" when she became disabled. As explained below, neither of these contentions form the basis for a cognizable claim, and even if they did, they would be barred by res judicata principles.

I.   **Failure to State a Claim**

   A.   **FMLA Claims Against MainePERS**

The FMLA is a statute aimed at helping "working women and men balance the competing demands of work and personal life." *Carrero-Ojeda*, 755 F.3d at 718. To that end, the FMLA entitles eligible employees to twelve weeks of leave from work during any twelve-month period, including for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In order to protect this substantive right:

> [T]he FMLA and its accompanying regulations make it unlawful for any employer to, among other things: (1) 'interfere with, restrain, or deny

6

> the exercise' of any FMLA right, 29 U.S.C. § 2615(a)(1); or (2) retaliate or 'discriminat[e] against employees . . . who have used FMLA leave,' such as by 'us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions,' 29 C.F.R. § 825.220(c).

*Carrero-Ojeda*, 755 F.3d at 718 (alterations in original).

Bastille's claims for FMLA interference and retaliation are based on MainePERS's interpretation of the term "in service" under 5 M.R.S.A. § 17924. Compl. ¶¶ 17, 21. Bastille contends that MainePERS "has violated the FMLA by counting FMLA time utilized by the Plaintiff against her, thereby disqualifying her for benefits." Compl. ¶¶ 17, 21.

FMLA liability is limited to employers. 29 U.S.C. § 2615(a)(1) (emphasis added) ("It shall be unlawful for any *employer* to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."); *id.* § 2615(a)(2) (emphasis added) ("It shall be unlawful for any *employer* to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."). Bastille's Complaint does not contain any allegations that MainePERS was at any time her employer. Compl. ¶¶ 17, 21 (emphasis added) ("[*MainePERS]* has violated the FMLA . . . ."). Nor has Bastille asserted any FMLA claims against her former employer MTA. Thus, Bastille has not stated a claim for any FMLA violation against MainePERS or the MTA.

    **B.**    **FLSA Record Retention**

In addition to imposing maximum hour and minimum wage requirements, the FLSA also imposes recordkeeping obligations upon covered employers, who must "make, keep, and preserve" records on employees' "wages, hours, and other conditions

7

and practices of employment." 29 U.S.C. § 211(c). Here, with respect to her record retention claim, Bastille alleges that the "Defendants failed to accurately keep track of records of Plaintiff's sick time, vacation time, and family medical leave act time, yielding a determination that she was no longer 'in service' and therefore did not qualify for disability benefits" and that "Defendant MTA failed to disclose to Defendant [MainePERS] that Plaintiff still had time on the books at the time she filed for disability benefits, thereby resulting in a denial of her disability benefits." Compl. ¶¶ 12-13. As with the FMLA, the FLSA applies only to employers. Bastille has not alleged that MainePERS was her employer, and she thus has not stated a FLSA record retention claim against MainePERS.

With respect to the MTA, the FLSA authorizes employees to sue their employers directly for unpaid overtime or minimum wages. *See* 29 U.S.C. § 216(b). But authority to enforce the FLSA's recordkeeping requirements is located solely with the Secretary of Labor. *See* 29 U.S.C. § 217 (authorizing the Secretary of Labor to initiate injunction proceedings to curtail violations of 29 U.S.C. § 215, which includes a section making it unlawful for an employer to fail to keep records as required by 29 U.S.C. § 211(c)). The FLSA does not authorize an employee like Bastille to bring a private action against her employer for a failure to adhere to the statute's recordkeeping requirements. *See Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002). This lack of a private right of action does not, however, make the statute's recordkeeping requirements toothless. First, an absence of adequate records may be used as evidence of an employer's "willfulness" in violating the

8

statute, meaning employees seeking owed wages are entitled to a three, rather than two, year statute of limitations. *See* 29 U.S.C. § 255(a); *Elwell*, 276 F.3d at 844. Second, the absence of required records lessens an employee's burden in proving damages once that employee has established she is owed unpaid wages. *See Fickett v. Golden Eagle Rest.*, No. 1:10-cv-497-JAW, 2011 WL 1253869, at *7 (D. Me. Mar. 30, 2011) (explaining that employee does not have an additional claim for damages based on employer's failure to keep adequate records, but is entitled to "the benefit of an evidentiary burden shift which allows this Court to award damages . . . despite the approximate nature of her proof"). Because the FLSA does not empower Bastille to bring a private action for damages for a recordkeeping violation, she has failed to state a FLSA record retention claim.[2]

## II.   Issue Preclusion

Alternatively, Bastille's FMLA and state law claims are precluded under principles of res judicata. "The Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.' " *Id.* (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986)). Thus, the preclusive effect of Bastille's state court action regarding her retirement disability benefits is governed by Maine law.[3]

---

[2] I do not independently analyze whether Bastille has failed to state a claim with respect to her state law claims, as both are dismissible under issue preclusion. Even if they were not dismissible, I would decline to exercise supplemental jurisdiction where no federal claims remain.

[3] Res judicata principles apply equally to administrative proceedings, so long as they "entail the 'essential elements of adjudication.' " *Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1160 (Me. 1992) (quoting *Town of North Berwick v. Jones*, 534 A.2d 667, 670 (Me. 1987)). Those elements "include 1) adequate notice, 2) the right to present evidence and legal argument and to rebut opposing evidence and argument, 3) a formulation of issues of law or fact to apply rules to specified parties concerning a

9

"The doctrine of res judicata—literally, 'thing adjudged'—is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *Beegan v. Schmidt*, 451 A.2d 642, 643-44 (Me. 1982). The doctrine has two components: issue preclusion and claim preclusion. *Macomber v. MacQuinn-Tweedie*, 834 A.2d 131, 138 (Me. 2003). I do not reach MainePERS's arguments on claim preclusion, because I find that Bastille's action is barred by issue preclusion.

Issue preclusion, also known as collateral estoppel, is based on "the fundamental principle that courts should not revisit factual matters that a party previously litigated and another court actually decided." *Miller v. Nichols*, 586 F.3d 53, 60 (1st Cir. 2009). Unlike claim preclusion, issue preclusion "is focused on factual issues, not claims." *Macomber*, 834 A.2d at 139. In other words, while claim preclusion focuses on the legal claims asserted in the prior action, issue preclusion "concerns factual issues, and applies even when the two proceedings offer different types of remedies." *Portland Water Dist. v. Town of Standish*, 940 A.2d 1097, 1100 (Me. 2008). And while claim preclusion requires privity, issue preclusion can be invoked by non-parties. *See Hossler v. Barry*, 403 A.2d 762, 770 (Me. 1979).[4]

---

specified transaction, 4) the rendition of a final decision, and 5) any 'other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question.'" *Jones*, 534 A.2d at 670 (quoting Restatement (Second) of Judgments § 83(2) (1982)). Bastille's administrative proceedings with MainePERS entailed those essential elements of adjudication. *See* Ex. A to Maine Public Employees Retirement System's Mot. to Dismiss 4 ("**Ex. A**") (ECF No. 5).

[4] That is why issue preclusion is an available defense for the Maine Turnpike Authority (the "**MTA**"), even though it was not a party in the state administrative or court proceedings.

Issue preclusion applies if: (1) "the identical issue was determined by a prior final judgment," and (2) "the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Portland Water Dist.*, 940 A.2d at 1100 (citation and internal quotation omitted). Whether issue preclusion bars Bastille from bringing claims here depends first on what issues were actually decided in the prior proceedings that resulted in the denial of her disability retirement benefit claim. In that proceeding, the Board clearly determined that Bastille's last day in service with the MTA was March 11, 2011. Ex. A at 5, 10-11. And further, that as of that date, she was not disabled. Ex. A at 10, 12. In the present action, Bastille's FMLA, breach of contract, and unjust enrichment claims center on the contention that MainePERS erred in determining her last date in service for the MTA. Thus, the issue Bastille seeks to litigate here is identical to an issue the Board resolved in its disability retirement benefit decision.

The next question is whether Bastille had a fair opportunity and incentive to litigate the issue of her last day in service in the MainePERS administrative process. "A party has a *fair opportunity* to litigate an issue if that party either controls the litigation, substantially participates in that litigation, or could have participated in the litigation had they chosen to do so." *State v. Hughes*, 863 A.2d 266, 269 (Me. 2004). Here, because Bastille "actually litigated the issue[]"of her last date in service to the Board and on appeal in state court, she "had both incentive and opportunity" to litigate that particular factual issue. *Miller*, 586 F.3d at 63.

Bastille resists preclusion by arguing that she could not have brought FMLA claims against the MTA through her 80C action in Superior Court. Pl.'s Answer to Def. MTA Mot. to Dismiss 15 (ECF No. 12). But that argument is a non-starter for issue preclusion, which is concerned with the factual issues resolved in a prior proceeding, not the labels given to claims. Thus, issue preclusion applies to when Bastille had her last day in service and she cannot re-litigate that question here in federal court.[5]

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motions to dismiss (ECF Nos. 5, 7).


SO ORDERED.

/s/ Nancy Torresen           __
United States Chief District Judge

Dated this 10th day of August, 2016.

---

[5]   I do not reach the Defendants' remaining arguments with respect to *Burford* abstention, Eleventh Amendment/Sovereign Immunity, or claim preclusion. I note that with respect to the Defendants' Eleventh Amendment arguments, when an "arm of the state" asserts such immunity, it bears the burden of proving that it applies. *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002). The First Circuit has developed an "arm of the state" test, which considers the state's intentions, structural indicators, and if necessary, whether any recovery would come from the state's treasury. *See, e.g., Grajales v. P.R. Ports Auth.*, No. 15-1278, 2016 WL 4001088, at *8 (1st Cir. July 26, 2016); *Irizarry-Mora v. Univ. of P.R.*, 647 F.3d 9, 12 (1st Cir. 2011). While both Defendants claim to be arms of the state, neither Defendant carried its burden under First Circuit precedent.